# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

**White Pine Insurance Company,**

  Plaintiff,

v.

**Romie McIntosh, *et al.*,**

  Defendants.

Civil No. 5:21-238-KKC

# OPINION AND ORDER

** ** ** ** ** **

This matter is before the Court on Defendants Romie McIntosh and Non-Stop Towing & Recovery's Motion to Dismiss, [DE 19], which Defendant Justin Rutherford has asked to join [DE 21].[1] In the Motion to Dismiss, Defendants ask that the Court exercise its discretion to decline jurisdiction over this declaratory judgment action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and dismiss the Complaint. Plaintiff White Pine Insurance Company did not file any

---

[1] Defendant Davon Williams has not made an appearance in this case and White Pine was unable to effectuate service on him. [*See* DEs 31, 34.] In order to serve Williams, the Court issued a Warning Order and appointed a Warning Order Attorney for him pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure and Rules 4.05–4.08 of the Kentucky Rules of Civil Procedure. [DE 35.] However, the Warning Order Attorney was unable to locate Williams, [DE 36], and the Clerk therefore entered default against him pursuant to Rule 55(a) of the Federal Rules of Civil Procedure [DE 39]. In this Opinion, the Court uses the term "Defendants" to refer to all four defendants collectively, including Williams, except when referring to the arguments made by McIntosh and Non-Stop, and joined by Rutherford, in the Motion to Dismiss. When discussing Defendants' arguments, the term "Defendants" includes only McIntosh, Non-Stop, and Rutherford.

response in opposition to Rutherford's motion to join his co-defendants' motion to dismiss. White Pine did respond in opposition to the motion to dismiss and has asked that the Court accept jurisdiction. [DE 22.] For the reasons stated in this Opinion, the Court will grant Rutherford's motion to join, will decline to exercise jurisdiction under the Declaratory Judgment Act, and will grant Defendants' Motion to Dismiss.

## BACKGROUND

### I.   Fayette Circuit Court Lawsuit

The underlying state court action stems from an incident that occurred after Justin Rutherford called AAA to have his vehicle towed. [DE 1-1 (State Court Complaint) at ¶¶ 9–17.] On May 26, 2020, Rutherford was unable to start his Jeep, so he called AAA Blue Grass, Inc. and asked to have it towed. [*Id.* at ¶ 10.] AAA Blue Grass contacted Defendant Non-Stop Towing & Recovery Service to perform the towing services, and Non-Stop sent its employee Davon Williams to Rutherford's address. [*Id.* at ¶ 11.] While Williams was loading it onto the tow truck, the Jeep's towing cable broke, which led to an exchange of words between Williams and Rutherford. [*Id.* at ¶ 12–13.] Rutherford alleges that Williams then violently assaulted him, causing Rutherford serious injury. [*Id.* at ¶ 13–14.]

At the time of the incident, Non-Stop carried a commercial insurance policy with Plaintiff White Pine Insurance Company that provided general liability coverage and commercial auto coverage ("the Policy"). [DE 1-2 (Insurance Policy) at 13.] Rutherford alleges that he

made various settlement demands upon White Pine for the injuries he sustained from the physical altercation with Williams, and that White Pine did not respond to his demands. [DE 1-1 at ¶¶ 33–34.]

On May 14, 2021, Rutherford filed the underlying state court action in Fayette Circuit Court. In the state court complaint, Rutherford asserted numerous claims. Rutherford asserted claims of negligent hiring, training, supervision, controlling, monitoring, and retention, and gross negligence against Non-Stop, AAA Blue Grass, and AAA Club Alliance. [*Id.* at ¶¶ 18–27.] Against Williams, he asserted an assault claim. [*Id.* at ¶¶ 28–29.] And against White Pine, Rutherford brought claims for bad faith, violations of the Kentucky Uniform Settlement Practices Act and Kentucky Consumer Protection Act, and fraud, seeking to hold it liable for wrongful denial of his claim. [*Id.* at ¶¶ 30–40.]

## II.   The Present Action

On September 27, 2021, White Pine filed this action against Non-Stop, Williams, Rutherford, and Romie McIntosh, who is the sole proprietor of Non-Stop, seeking a declaratory judgment regarding its obligations to defend and indemnify Non-Stop and Williams in the underlying state court action. [DE 1.] Specifically, White Pine asserts that the claims against Non-Stop and Williams do not fall within the coverage provided by the Policy, and that various exclusions in the Policy bar coverage for the claims. [*Id.* at ¶ 19.]

The Policy provided commercial general liability coverage and commercial auto coverage. Under the general liability coverage, White

– 3 –

Pine is liable for damages due to "bodily injury" or "property damage," so long as it is caused by an "occurrence" that takes place in the covered territory and during the policy period. [*Id.* at ¶ 15.] Under the commercial auto coverage, White Pine is liable for damages due to "bodily injury" or "property damage," so long as it is caused by an "accident" resulting from the ownership, maintenance, or use of a covered "auto." [*Id.*] The Policy defines an "accident" as including "continues or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" [*Id.*] White Pine also has a duty to defend against any suit seeking damages for any "bodily injury" or "property damage" to which the Policy applies. [*See id.*]

The Policy contains three relevant exclusions. The first excludes coverage for "bodily injury" or "property damage" that is "expected or intended from the standpoint of the insured." [*Id.*] The second excludes coverage for "bodily injury," "property damage," "personal injury," or "advertising injury" that arises from assault, battery, offensive contact between persons, apprehension of offensive contact, or threats. [*Id.*] And the last exclusion states that while White Pine will defend against a suit seeking punitive damages, it "will have no obligation to pay for any costs, interest, or judgment attributable to punitive or exemplary damages." [DE 1-2 at 25.]

In its complaint, White Pine argues that Rutherford's claims against Non-Stop and Williams are not covered under the Policy because (1) his alleged injuries arose from an assault, battery, or other physical altercation, (2) those injuries were expected or intended from the

– 4 –

insured's standpoint, (3) and there was no "accident" as defined in the Policy. [DE 1 at ¶¶ 16–19.] White Pine also argues that the punitive damages exclusion precludes coverage as to the punitive damages sought by Rutherford in the underlying state court action. [*Id.* at ¶ 20.] White Pine therefore seeks a determination that, under the Policy, there is no insurance coverage for the Defendants for the conduct alleged by Rutherford in the underlying state court action, and thus for a determination that White Pine has no duty to defend or indemnify Williams, McIntosh, Non-Stop, or any of Non-Stop's agents, representatives, or employees. [*Id.* at ¶ 24.]

On November 26, 2021, McIntosh and Non-Stop filed a motion to dismiss, arguing that the Court should decline to exercise its jurisdiction under the Declaratory Judgment Act. [DE 19.] Eleven days later, Rutherford filed a motion asking to join the motion to dismiss. [DE 21.] White Pine responded to the motion to dismiss, arguing that this action should not be dismissed and that the Court should exercise its discretion to accept jurisdiction. [DEs 22, 23.][2] The Defendants filed a reply brief, and the Motion to Dismiss is ripe for adjudication.

## ANALYSIS

### I. Jurisdiction Under the Declaratory Judgment Act

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, *may* declare

---

[2] White Pine filed identical briefs in response to both the motion to dismiss and Rutherford's motion to join. [DEs 22, 23.] The response briefs do not indicate opposition to the motion to join. Because White Pine's briefs make identical arguments, the Court will only cite and refer to the first brief filed.

the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). "As the use of the permissive 'may' suggests, 'a district court's ability to hear an action under the Declaratory Judgment Act does not compel it to do so.'" *Frankenmuth Mut. Ins. Co. v. Balis Campbell*, 510 F. Supp. 3d 482, 488 (E.D. Ky. 2020) (quoting *Grange Mut. Ins. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 785 (E.D. Ky. 2008)). The Act thus gives courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

This discretion must be exercised cautiously, and "[g]enerally, courts should only [accept jurisdiction] when doing so would advance the interests of justice or preserve resources of the parties." *Owners Ins. Co. v. Scates Builders, LLC*, 2022 WL 1310801, 2022 U.S. Dist. LEXIS 79001, at *9 (E.D. Ky. May 2, 2022) (citing *Grange*, 565 F. Supp.2d at 785). As this Court has previously explained: "We are, after all, courts of limited jurisdiction. And, if our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources." *Grange*, 565 F. Supp. 2d at 785 (cleaned up). The Sixth Circuit has similarly "cautioned district courts not to jump into the middle of ongoing litigation," noting that "declaratory judgment actions seeking an advance opinion of indemnity issues are seldom helpful in resolving an ongoing action in another court." *Id.* (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004)) (cleaned up). Nevertheless, "no per se rule exists against exercising

jurisdiction" under the Declaratory Judgment Act. *Id.* (citing *Bituminous*, 373 F.3 at 812–13).

## II.    The *Grand Trunk* Factors

A district court's discretion to exercise jurisdiction is substantial, but not unguided. *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). In the Sixth Circuit, the five factors identified in *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) frame the inquiry. These non-exclusive factors, often called the *Grand Trunk* factors, are intended to be "helpful guidelines" for district courts to consider when determining whether to accept or decline jurisdiction under the Declaratory Judgment Act. *Hoey*, 773 F.3d at 759. The factors direct court to consider:

> (1) Whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
>
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction, which is determined by asking:
>
>> a.  whether the underlying factual issues are important to an informed resolution of the case;
>>
>> b.  whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>>
>> c.  whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal

> common or statutory law dictates a resolution of
> the declaratory judgment action; and
>
> (5) whether there is an alternative remedy which is
> better or more effective.

*Id.*

Three important policy considerations underpin the *Grand Trunk* factors: efficiency, fairness, and federalism. *Id.* (citing *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 390–91 (5th Cir. 2003)). The relative weight of each factor, as well as the weight of these underlying considerations, depend on the facts of the case. *Id.* With these principles in mind, the Court will address each factor in turn.

### A.   Factors One and Two: Will the Action Settle the Controversy and Clarify the Legal Relations?

The first two *Grand Trunk* factors are often considered together since a declaratory judgment that settles the controversy will almost certainly clarify the legal relations in issue. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019). The Sixth Circuit has developed split lines of precedent concerning these two factors, which the Court will discuss below.

The first factor asks, "whether the declaratory action would settle the controversy." *Grand Trunk*, 746 F.2d at 326. Two lines of cases have developed in the Sixth Circuit, each holding a different view of what it means to "settle the controversy." One line of cases holds that a declaratory action will "settle the controversy" if it can resolve the insurance coverage issue. In these cases, the first factor is met when the declaratory action can settle the insurance coverage issue, even though

– 8 –

it will not resolve the entire underlying state court action. *See Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 435 (6th Cir. 2018) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008)). The rationale for this line of cases is often that "a declaratory judgment is proper if it will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action." *United Specialty Ins. Co. v. Cole's Place, Inc.*, 2018 WL 1914731, 2018 U.S. Dist. LEXIS 67850, at *10 (W.D. Ky. Apr. 23, 2018), *aff'd* 936 F.3d 386 (6th Cir. 2019) (citation omitted).

The second line of cases holds that a declaratory action will not "settle the controversy" if it fails to settle the ultimate controversy between the parties that is ongoing in state court. *Mass. Bay*, 759 F. App'x at 436 (quoting *Flowers*, 513 F.3d at 555). In these cases, the first factor is not met if the declaratory action would not resolve the entire underlying state court action, and they often involve factual disputes that are also at issue in the state court, or instances where the state court plaintiff has not been joined in the federal action. *Cole's Place*, 2018 U.S. Dist. LEXIS 67850, at *10; *Encompass Indem. Co. v. Gray*, 434 F. Supp.3d 560, 570–71 (W.D. Ky. 2020).

The second *Grand Trunk* factor considers "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. As with the first factor, Sixth Circuit precedent on the second is conflicting. A split has developed among the Circuit's jurisprudence "concerning whether the district court decision must only clarify the legal relations presented in

the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Flowers*, 513 F.3d at 557 (citations omitted). In *Flowers*, the Sixth Circuit found "the former line of precedent to be more persuasive than the latter" holding that for a declaratory judgment to satisfy factor two, it must simply provide a final resolution of the discrete dispute presented and need not settle all the relations in state court. *Id.* at 557 (citations omitted); *but see Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007); *Bituminous*, 373 F.3d at 814 ("[A]lthough a declaratory judgment would clarify the legal relationship between Bituminous and J & L pursuant to the insurance contracts, the judgment would not clarify the legal relationship between Shields and J & L in the underlying state action."). More recent decisions again affirmed the lower courts' exercise of jurisdiction, finding no abuse of discretion as to the second *Grand Trunk* factor where the declaratory action clarified the legal relationships of the parties to the declaratory action, but not the state court litigation. *See Cole's Place, Inc.*, 936 F.3d at 398–99.

In *Flowers*, the Sixth Circuit attempted to reconcile its precedent and suggested that the contrary results found in these cases might be explained by their different factual scenarios. 513 F.3d at 555. And indeed, a close examination of the facts of those cases reveals consistent reasoning, despite the seemingly contradictory outcomes. In cases where a declaratory judgment would not have a binding effect on all relevant parties, or where the binding effect is uncertain—such as when the state-court plaintiff is not joined in the federal declaratory action—

courts have tended to hold that the first two *Grand Trunk* factors are not satisfied because the declaratory judgment action will not "settle the controversy" or clarify the legal relationships as to *all* parties. *E.g.*, *Travelers*, 495 F.3d 272 ("Granting the declaratory relief sought by [the insurers] settles the scope of the insurance coverage under the respective policies and clarifies their obligation to defend [the defendant] in the state court action, but it does nothing to 'clarify the legal relationship' between the other parties."); *Bituminous*, 373 F.3d at 814 ("Although a declaratory judgment would settle the controversy between [the insurer and the insured], [the state court plaintiff] was not made a party to the declaratory judgment action. Therefore, any judgment in the federal court would not be binding as to him and could not be res judicata in the tort action."); *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *but see Cole's Place*, 936 F.3d at 398 (holding that failure to join state court plaintiff in declaratory judgment action does not automatically dictate the first *Grand Trunk* factor is not satisfied).

Prior cases have also held that difficult state law questions or the presence of "factual issues that are also being decided in the state-court litigation usually cuts against a finding that factors one and two are satisfied." *Cole's Place*, 936 F.3d at 399; *Bituminous*, 373 F.3d at 813–14 (finding a declaration of insurance coverage would not resolve the controversy where the outcome hinged solely on a fact-based question regarding whether the state court action plaintiff was an employee of the defendant).

– 11 –

Though the considerations a court should take into account are case specific, this Court has summarized some common factual considerations:

> The [*Flowers*] Court . . . instruct[s] courts to look at the underlying facts; i.e., whether the question was already being or could be considered in state court, whether the parties were the same in state and federal court, whether parties in the state action would be bound by the federal court action to which they were not a part, whether the issue was one being developed by state court discovery, and whether the scope of coverage or obligation to defend was before the state court.

*Grange*, 565 F. Supp. 2d at 786.

Here, the first consideration is whether the parties in the state action would be bound by a declaratory judgment in this action. White Pine has joined all parties to the underlying state court action that would be potentially affected by a declaratory judgment: Justin Rutherford, the state court plaintiff; Non-Stop Towing, a state court defendant and White Pine's insured; Romie McIntosh, who is Non-Stop's sole proprietor; and Davon Williams, the state court defendant who's alleged actions are central to White Pine's claims here and which have subjected Non-Stop to potential liability, and to whom White Pine might owe a duty to defend or indemnify. The underlying state court action names other defendants, but those parties do not have any discernable interest in and would be unaffected by a declaration of coverage. A declaratory judgment in this action would be binding on, and therefore "settle the controversy" among, all relevant parties. This weighs in favor of accepting jurisdiction.

Next, the Court considers whether this case presents factual issues that are also being decided in the state court action. White Pine asserts that this case presents pure questions of law and that it has made "a cut-and-dried request . . . that only requires" the Court to compare "the subject insurance policy to the allegations in the underlying lawsuit." [DE 22 at 2.] But this is only partially true. The declaratory judgment sought by White Pine would require the Court to determine two distinct questions: (1) whether White Pine is obligated to *defend* Non-Stop or Williams in the underlying state court action, and (2) whether White Pine is obligated to *indemnify* Non-Stop or Williams for any judgments awarded against them in that action. [DE 1 ¶ 24.] The first is a purely legal question, but the second may involve questions of fact that are also before the state court.

As to the duty to defend, factual determinations are not required because "[t]he determination of whether a defense is required must be made at the outset of the litigation." *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991). "Under Kentucky law, [the Court] make[s] the coverage determination by reference to two documents: the complaint and the policy." *Cole's Place*, 936 F.3d at 399–400 (citing *James*, 814 S.W.2d at 279). Thus, to determine whether White Pine has a duty to defend Non-Stop or Williams in the underlying state court action, this Court would simply determine "if there is any allegation [in the state court complaint] which potentially, possibly or might come within the coverage of the policy." *James*, 814 S.W.2d at 279 (citing *O'Bannon v. Aetna Cas. and Sur. Co.*,

678 S.W.2d 390 (Ky. 1984)). Factual findings are not necessary because "[t]he insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action." *Id.* (citing *Wolford v. Wolford*, 662 S.W.2d 835 (Ky. 1984)).

However, the obligation to indemnify is "separate and distinct" from the duty to defend. *Id.*; *see also Emps. Reinsurance Corp. v. Mut. Ins. Co.*, 2007 WL 486715, 2007 U.S. Dist. LEXIS 10399, at *4 (W.D. Ky. Feb. 9, 2007) ("[W]here the claims against the insured are potentially within the coverage of the insuring agreement, a duty to defend exists even if the ultimate duty to indemnify does not exist."). Under Kentucky law, whether an insurer has an obligation to indemnify is a question of law to be determined *after* the facts have been determined by a jury. *York v. Petzl Am., Inc.*, 353 S.W.3d 349, 353 (Ky. Ct. App. 2010) (citing *Robinson v. Murlin Phillips & MFA Ins. Co.*, 557 S.W.2d 202, 204 (Ky. 1977)). Thus, to determine whether White Pine has a duty to indemnify Non-Stop or Williams, any disputed material facts must be resolved. To determine whether there is indemnity for Rutherford's claims of negligence and intentional assault, the Court may have to resolve the same factual issues that go to the merits of those state court claims— factual questions such as what Williams actually did or did not do, Williams's employment status, whether Williams has a history of acting violently or aggressively, and if so, whether Non-Stop had knowledge of that history. Though the issue of White Pine's duty to defend does not

– 14 –

involve fact-based questions of state law, the issue of indemnity does. This weighs the first two factors against exercising jurisdiction.

Next, the Court considers whether the declaratory action presents novel or complex issues of state law. White Pine has asked the Court to determine whether there is insurance coverage the conduct alleged in the underlying state court action. [DE 1 at ¶ 24.] The Defendants have identified no novel or complex issue of law necessary for this Court to resolve as it considers White Pine's request. The scope of coverage under the insurance contract between White Pine and Non-Stop does not appear to be a "novel or complex" legal issue, nor does it seem to "raise unsettled areas of insurance law." *Certain Underwriters at Lloyd's, London v. Qahtan Mohammed Alkabsh*, 2011 WL 938407, 2011 U.S. Dist. LEXIS 26593, at *19 (W.D. Tenn. Mar. 15, 2011). This tends to point toward accepting jurisdiction.

The Court next considers whether the issue of coverage is before the state court. When the coverage issue is not before the state court, courts have often found that the first two *Grand Trunk* factors favor accepting jurisdiction. *E.g.*, *Flowers*, 513 F.3d at 556 ("The only issue addressed by the district court was whether Scottsdale's insurance policy for the Morton Center covered Flowers as an insured . . . . [T]his issue was not . . . considered in the state court action . . . ."); *Hoey*, 773 F.3d at 758 (declaratory action that an insured filed in state court was removed to federal court and consolidated with declaratory action filed by insurer); *W. Am. Ins. Co. v. Prewitt*, 208 F. App'x 393, 397 (6th Cir. 2006) ("A determination about the applicability of the exclusion

provision, at issue here, turns on . . . a question not before the state court."); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) ("[N]either the scope of insurance coverage nor the obligation to defend was before the state court."); *Allstate Ins. Co. v. Green*, 825 F.2d 1061 (6th Cir. 1987) (insurer agreed to defend state court tort claim under reservation of rights while seeking coverage determination through federal declaratory judgment action); *State Farm and Cas. Co. v. Odom*, 799 F.2d 247 (6th Cir. 1986) (finding that a declaratory relief action could settle the insurance coverage controversy not being addressed in the underlying state action). But in this case, the coverage issue *is* being litigated as part of the underlying state court action. Rutherford has asserted a tort claim for common law bad faith against White Pine, and in Kentucky, bad faith requires three elements:

> (1) an obligation to pay under the policy; (2) no reasonable basis in law or fact for denying the claim; and (3) knowledge on the part of the insurer that no reasonable basis existed for denying the claim or the insurer's reckless disregard as to whether such basis existed.

*United States Liab. Ins. Co. v. Watson*, 626 S.W.3d 569, 575 (Ky. 2021). The issue of coverage is squarely before the state court because it is a prerequisite to a bad faith claim against an insurer. *Travelers Indem. Co. v. Armstrong*, 565 S.W.3d 550, 568 (Ky. 2018) ("[I]t is sound principle that, in absence of a contractual obligation in an insurance policy for coverage, there can be no claim for bad faith."). Resolution of Rutherford's bad faith claim against White Pine necessarily requires a

determination of coverage, and thus both "courts ha[ve] to address the identical issue" of insurance coverage.[3] *See Bituminous*, 373 F.3d at 813–14.

On balance, these considerations lead the Court to conclude that the first two *Grand Trunk* factors cut against exercising jurisdiction in this case. A declaratory judgment would be binding on the relevant parties and would "settle the controversy" as to White Pine's duty to defend and indemnify, but whether it would resolve Rutherford's bad faith claim is speculative at this point. "Although a declaratory judgment [in White Pine's favor] would likely resolve the bad faith claim . . . arguing that this favors jurisdiction only looks at one side of the coin." *Montpelier US Ins. Co. v. Collins*, 2012 WL 588799, 2012 U.S.

---

[3] In its response brief, White Pine argues that the issue of whether there is coverage under its policy is not before the state court because "White Pine is not a party to that suit, having not been named a party nor served with a lawsuit, although White Pine is (incorrectly) listed in the Complaint in the Rutherford case as a d/b/a of MS General Agency, Inc." [DE 22 at 3.] Thus, according to White Pine, the state court "is not positioned to determine any rights or obligations of the parties hereto with regard to the insurance contracts". [*Id.*] However, Rutherford has explicitly asserted a bad faith claim against White Pine in the state court complaint. In it Rutherford alleges that "White Pine Insurance Company . . . ha[s] continued to refuse to make a reasonable settlement offer" and that "White Pine Insurance Company . . . acted in bad faith by not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims even though liability had become reasonably clear . . . ." [DE 1-1 at ¶¶ 33, 34.] Even if White Pine has not been properly named as a defendant in the state court action, Rutherford has clearly alleged a bad faith claim against it, and that claim puts the coverage issue squarely before the state court. Further, White Pine's argument actually weighs against accepting jurisdiction. It would be a drastic and unwarranted intrusion into the state court's jurisdiction, as well as an affront to principles of federalism and comity, for this Court to declare that the state court cannot consider the bad faith claim, which is clearly and unambiguously asserted against White Pine. The state court itself is in a vastly superior position to resolve disputes as to whether the claim is properly asserted or whether White Pine is properly named in the state court action, which further weighs against this Court exercising jurisdiction.

Dist. LEXIS 22497, at *8 (E.D. Ky. Feb. 22, 2012). The flip side of that coin is that a ruling against White Pine would send the parties back to state court to resolve the bad faith claim. "A declaratory judgment action that would settle the underlying state-court litigation only if the Court rules a certain way still poses an undue risk of forcing the parties to engage in fractured, piecemeal litigation and thus weighs against exercising jurisdiction." *Collins*, 2012 U.S. Dist. LEXIS 22497, at *8. Because at this point resolution of the bad faith claim is speculative, a declaratory judgment would not truly "settle the controversy" because it would provide only partial "relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Johnson*, 923 F.2d at 447–48 (quoting *Allstate*, 913 F.2d at 277).

As to the second *Grand Trunk* factor, exercising jurisdiction would serve only a limited purpose in clarifying the legal relations in issue. A declaratory judgment from this Court would clarify the legal relationship between White Pine and its insured(s), but would not settle the legal relations between any other parties. Therefore, the Court finds the first two *Grand Trunk* factors weigh against exercising jurisdiction.

### B. Factor Three: Is this Procedural Fencing or a Race for Res Judicata?

The third *Grand Trunk* factor asks "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Grand Trunk*, 746 F.2d at 326 (citations omitted). Here, the Court finds that this factor is neutral.

"The third factor usually does not weigh heavily in the analysis." *Cole's Place*, 936 F.3d at 399. The Sixth Circuit has found evidence of "procedural fencing" when the declaratory judgment action is filed in anticipation of the underlying state court litigation. *Id.* But when the plaintiff files its claim after the underlying state court action, it should be given "the benefit of the doubt that no improper motive fueled the filing of th[e] action." *See Bituminous*, 373 F.3d at 814. Thus, courts "generally do not make a finding of procedural fencing if the declaratory-judgment plaintiff filed after the commencement of litigation in state court." *Cole's Place*, 936 F.3d at 399 (citing *Flowers*, 513 F.3d at 558).

White Pine filed this action on September 27, 2021, over four months after the underlying state court action commenced. The Court therefore presumes there was no bad faith or improper motive on White Pine's part.

Nevertheless, Defendants argue that White Pine chose to file this action in federal court "seeking to secure a favorable forum and race to *res judicata* ahead of the underlying state court action." [DE 19-1 at 9.] They argue that because the coverage issue is before the state court through Rutherford's bad faith claims, White Pine could have adjudicated the issue there, and that White Pine's decision to instead litigate in federal court shows its attempting to obtain a favorable ruling ahead of the state court action in a more favorable forum.

In support of their argument, Defendants cite *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562 (6th Cir. 2006). In *Albex*, the district court found that the third factor weighed against accepting

– 19 –

jurisdiction even though there was no evidence of bad faith, and the plaintiff filed its declaratory action long after the state court action had commenced. The defendant, Albex Aluminum, was sued in state court for wrongful death along with two co-defendants, but all three parties settled prior to the conclusion of trial. As part of the settlement agreement, Albex was to pay less than one percent of the total sum, but the two co-defendants reserved the right to maintain a cross-claim against Albex for contribution and indemnification. The state court eventually ruled in the co-defendants favor on their contribution cross-claims and at that point, the only issue remaining was for a jury to decide how much of the settlement Albex should be responsible for. Before that amount was determined, Albex's insurer, U.S. Fire, filed a declaratory action in federal court, seeking a declaration that it did not have to indemnify Albex for any additional amount of the settlement it was responsible for.

In finding that the third factor weighed against exercising jurisdiction, the district court determined that "the chain of events already in motion in state court . . . lead[s] ineluctably to [the coverage] issue being brought before the state court," which the district court thought was clear evidence of U.S. Fire "trying to secure a favorable ruling here, rather than take the risk that it will not fare as well in Albex's inevitable state court action against it." *Albex*, 161 F. App'x at 565. Essentially, the district court determined that U.S. Fire was attempting to "race to *res judicata*" by trying to have a federal court decide the coverage issue before it "inevitably" ended up in front of the

state court. The district court appears to have determined that the coverage issue would "inevitably" be before the state court because Albex would be able to file an indemnification action against U.S. Fire after the jury determined how much of the settlement Albex was responsible for paying. On appeal, the Sixth Circuit concluded the district court's finding was not an abuse of discretion. *Id.* at 565.

Defendants appear to latch on to the district court's use of the word "inevitable" in their effort to analogize the present case to *Albex*. They seem to suggest that here, the coverage issue will "inevitably" end up before the state court via Rutherford's bad faith claim, just as the coverage issue would "inevitably" end up before the state court in *Albex*. Thus, the argument seems to go, like the insurer in *Albex*, White Pine is attempting to adjudicate the coverage issue in federal court only to secure a favorable forum and have the issue determined before the state court can address it.

Defendants' argument is unconvincing for several reasons. First, *Albex* is inapplicable to the present case. The district court in that case determined that, consistent with precedent, the filing of a federal declaratory action ahead of a state court action is evidence of procedural fencing. The district court's decision was grounded in the fact that the "chain of events" in the case made it inevitable that a state court action would be filed, meaning the declaratory action was filed ahead of the state court action. *Albex* thus stands for the proposition that courts can find evidence of procedural fencing where a federal declaratory action is filed before a state court action, even if the state court action has not

actually been filed, so long as the filing of the state court action is inevitable. In the present case, Rutherford's state court action was filed before White Pine's federal action and *Albex* therefore has no application.

Even if *Albex* was applicable to the present case, it is an unpublished opinion and not binding precedent, and only valuable to the extent it is persuasive.[4] *Reese v. Comm'r of Soc. Sec.*, 2017 WL 6387855, 2017 U.S. Dist. LEXIS 205569, at *17 (E.D. Mich. Dec. 14, 2017) (citing *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007)). The Court does not find it persuasive and respectfully disagrees with the analysis of the district court in *Albex*.[5] The third *Grand Trunk* factor "is meant to is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a

---

[4] Further, even if it was a published opinion and somehow applicable to this case, the outcome of *Albex* would not compel the same result here. The *Grand Trunk* factors analysis is heavily fact dependent and district courts are given broad discretion in weighing the factors. In *Albex*, the Court of Appeals did not state that it agreed with the district court's approach—only that the district court had not abused its discretion as to the third factor. As the Court itself explained, when deciding whether to exercise jurisdiction over a declaratory judgment action, if a district court's conclusion is contrary to that of a factually similar published decision, that contrary conclusion "does not mandate a reversal" but instead "merely illuminates the broad discretion a district court enjoys under the Declaratory Judgment Act." *Albex*, 161 F.App'x at 564.

[5] The district court's reasoning in *Albex* also appears to be irreconcilable with the Sixth Circuit's published opinion in *Flowers*. Two years after *Albex*, the *Flowers* Court held that "[a] district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" 513 F.3d at 558 (quoting *Odom*, 799 F.2d at 250 n.1). It further elaborated: "While this action may have been an attempt to preempt an issue which the state court would eventually consider, the Declaratory Judgment Act gives Scottsdale the right to do precisely that, especially when the state court litigation has been ongoing for several years without resolving the issue." *Id.*

"natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.'" *Flowers*, 513 F.3d at 558 (quoting *Amsouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). In *Albex*, the district court focused heavily on the fact that the coverage issue *could eventually* be decided by a state court, and it characterized this mere possibility as an inevitability simply because the insurer would be able to file an indemnification action at some point in the future. But the same is true of every insurance coverage declaratory action—if there is a dispute about coverage, eventually it can be settled in a state court indemnification action. The mere availability of eventual resolution in state court should not be a consideration in, much less determinative of, the third *Grand Trunk* factor.

The district court in *Albex* did not indicate that state court action to resolve the coverage issue was imminent, only that it was inevitable. And the only "evidence" that the plaintiff had filed the action to acquire a favorable forum was the fact that the plaintiff had filed the action in federal court rather than wait for a state court forum to become available. If filing a declaratory judgment action in federal court is evidence of bad faith, this factor would always weigh against exercise of jurisdiction. In this Court's view, that reflects a misunderstanding of the third *Grand Trunk* factor. Unless there are actual indications of bad faith or improper motive, the mere fact that a declaratory judgment plaintiff chooses to adjudicate their dispute in a federal forum—a choice Congress has seen fit to give—should not be a consideration when considering whether a declaratory action is merely being used for

"procedural fencing" or a "race to *res judicata*." *See Flowers*, 513 F.3d at 558 ("A district court should not deny jurisdiction to a plaintiff who has not done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.") (cleaned up).

Here, White Pine filed its declaratory judgment action months after the underlying state court action and there is no evidence of bad faith or improper motive. Because "the Sixth Circuit has held that a finding of no improper motive under the third factor . . . simply means that this factor is neutral," the Court's finding that White Pine "did not engage in unfair tactics does little to affect its overall conclusion on whether exercising jurisdiction is proper." *Brit UW Ltd. v. Smith*, 401 F. Supp. 3d 804, 814 (E.D. Ky. 2019).

### C.  Factor Four: Will this Action Increase Friction Between State and Federal Courts?

The fourth factor asks "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Grand Trunk*, 746 F.2d at 326. "Like factors one and two, this factor focuses on the presence of novel or complicated state law or factual issues." *Frankenmuth*, 510 F. Supp. 3d at 495 (citing *Cole's Place*, 936 F.3d at 400). On this point, the Supreme Court has warned that "a district court might be indulging in '[g]ratuitous interference'" if it permits a federal declaratory relief action to proceed when "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court." *Flowers*, 513 F.3d at 559 (quoting *Wilton*, 515 U.S. at 283).

"However, 'the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction.'" *Id.* at 560 (quoting *Green*, 825 F.2d at 1067).

The Sixth Circuit has identified three sub-factors that district courts should use when considering the fourth factor:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* (quoting *Bituminous*, 373 F.3d at 814–15). The Court will address each in turn.

### 1. Sub-Factor One: Are the Underlying Factual Issues Important to an Informed Resolution of the Case?

This sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.* When a declaratory action is "seeking a declaration of the scope of insurance coverage," the issue can "sometimes be resolved as a matter of law and do[es] not require factual findings by a state court." *Id.*

Here, White Pine has asked the Court for a declaration that it is not obligated to defend or indemnify Non-Stop or Williams in the underlying state court action. As the Court previously explained, the

issue of whether there is a duty to defend can be resolved without factual findings, but the issue of indemnity may hinge upon the resolution of certain facts. Defendants argue that underlying factual issues are critical to a coverage determination: "the hiring, training, supervision, monitoring, controlling, and retention of Davon Williams by Non-Stop; the actions of Davon Williams; Davon Williams work status; and the Plaintiff's claims of negligence and gross negligence." [DE 19-1 at 10.] In the state court action, Rutherford has alleged that Non-Stop Towing was negligent, grossly negligent, and reckless in hiring, training, supervising, controlling, monitoring, and retaining Williams. [DE 1-1 at ¶¶ 18–27.]

As previously stated, under Kentucky law, as interpreted by the Sixth Circuit, the question of whether there is a duty to defend does not depend on whether Non-Stop or Williams acted as Rutherford alleges, or whether Rutherford's claims have merit, but instead whether those allegations and claims "potentially, possibly, or might come within the coverage of the policy." *Cole's Place*, 936 F.3d at 400 (quoting *James*, 814 S.W.2d at 279). Because a determination as to the duty to defend must be made at the outset of the litigation, what Non-Stop or Williams actually did or did not do is not relevant. What matters is what Rutherford's complaint *says* they did—i.e., whether "the language of the complaint would bring [the state-court litigation] within the policy coverage." *Cole's Place*, 936 F.3d at 400 (quoting *James*, 814 S.W.2d at 279).

"Here, comparing [Rutherford's state court complaint] with [White Pine's] declaratory-judgment complaint reveals no as-yet-unresolved factual issues that stand between a federal court and its informed resolution of the [duty to defend] question." *Cole's Place*, 936 F.3d 386 at 400. However, the question of whether White Pine is obligated to indemnify Non-Stop or Williams may hinge on the resolution of factual questions before the state court. Consequently, the Court finds that this sub-factor indicates that exercising jurisdiction over this matter poses a risk of increasing friction between state and federal courts.

### 2.    *Sub-Factor Two: Is the State Court in a Better Position to Evaluate Those Factual Issues?*

The second sub-factor focuses on whether the federal or state court is in a better position to resolve the issues in the declaratory action. *Flowers*, 513 F.3d at 560. Typically, this sub-factor weighs in favor of exercising jurisdiction "when the state law is clear and when the state court is not considering the issues." *Id.* When the declaratory action involves novel issues of state law, it usually weighs against jurisdiction because "[w]e generally consider state courts to be in a better position to evaluate novel questions of state law." *Id.* However, "novelty is not the only concern*." Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, 2012 WL 3067579, 2012 U.S. Dist. LEXIS 104955, at *11 (E.D. Ky. July 27, 2012). When the declaratory action presents only questions of state law, this sub-factor can weigh against exercising jurisdiction because even if the issues are not novel,

– 27 –

they are questions "with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Bituminous*, 373 F.3d at 815; *see also Abundance Coal*, 2012 U.S. Dist. LEXIS 104955, at *11–12 (explaining that in *Bituminous*, the Sixth Circuit held the Kentucky court was better positioned to resolve questions of Kentucky law simply because state courts are more familiar with questions of state law, and that the novelty of the issue was an additional reason that the state court was in a better position to resolve the matter). Thus, this sub-factor requires courts to consider whether the nature of the facts and issues are such that "state courts are best situated to identify and enforce the public policies that form the[ir] foundation . . . ." *Bituminous*, 373 F.3d at 815 (quoting *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990)).

Here, the declaratory action involves an "issue of the insurance contract interpretation" that does not appear to be novel, but "with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Bituminous*, 373 F.3d at 815. It "presents a question of state law, novel or not, and the state court's superior ability to apply its own law weighs against exercising jurisdiction." *Frankenmuth*, 510 F. Supp. 3d 482, 497 (E.D. Ky. 2020); *see also Grange*, 565 F. Supp. 2d at 790 ("Since this is an insurance action, the state court is better situated to decide the issue, weighing against jurisdiction."). Further, as previously explained, the issue of insurance coverage is before the state court via Rutherford's bad faith claims against White Pine. The fact that the state court is considering the issue weighs against exercise of

jurisdiction. *See Flowers*, 513 F.3d at 560 ("When an insurance company is not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend is before the state court, a decision by the district court on these issues would not offend principles of comity.") (cleaned up).

In this case, the state law is clear, which indicates this sub-factor "is neutral and does not weigh heavily in the balance." *Cole's Place*, 936 F.3d at 401. But because the issue is already before the court in the underlying state action, and because it is an issue of state law, exercise of jurisdiction would offend principles of comity. The Court finds that this sub-factor cuts against exercising jurisdiction as doing so would cause friction between state and federal courts and encroach upon the state court's jurisdiction.

### 3.     *Sub-Factor Three: Is There a Close Nexus Between the Underlying Factual and Legal Issues and State Law/Policies?*

This subfactor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. The Sixth Circuit has previously held that "issues of 'insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve.'" *Id.* (quoting *Travelers*, 495 F.3d at 273). "The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* (quoting *Bituminous*, 373 F.3d at 815). "However, not all

– 29 –

issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them." *Id.*; *see Northland*, 327 F.3d at 454 (finding that, although the resolution of the declaratory judgment action seeking a determination of the scope of an insurance policy was governed by state contract law, "no state law or policy would be frustrated by the district court's exercise of jurisdiction, which would require the application of [state] law"). But "even in cases where state law has not been difficult to apply, [the Sixth Circuit] has usually found that the interpretation of insurance contracts is closely entwined with state public policy." *Cole's Place*, 936 F.3d at 401.

This case involves an insurance contract's scope: whether White Pine's policy covers the allegations in Rutherford's complaint against Non-Stop and Williams. "Interpretation of Kentucky insurance contracts is guided by state public policy," and even if there are "clear indications from the Kentucky courts regarding how such an issue should be resolved, Kentucky courts are in a better position to resolve the insurance policy interpretation in this case." *Flowers*, 513 F.3d 546 at 561. The nexus between the legal issues in this case and state policy is obvious, and the "the *lack* of nexus between the state law issues presented and the federal forum is [equally] obvious—no federal-law questions are involved in the coverage issue before the Court." *Frankenmuth*, 510 F. Supp. 3d at 498 (cleaned up).

This case does not turn on federal law, 'but rather Kentucky's interpretation of its insurance contracts—state law that is "guided by state public policy." *Flowers*, 513 F.3d at 561. "While federal courts are

not unfit to consider insurance questions, . . . the presence of this exclusively state issue causes this sub-factor to counsel against exercising jurisdiction." *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 790 (E.D. Ky. 2008).

In sum, though the state law is reasonably clear and "either the state or federal court is capable of deciding this case," *Grange*, 565 F. Supp. 2d at 790, the coverage issue is already before the state court and "is a pure question of state law that is intimately intertwined with the state's regulation of the insurance industry." *Abundance Coal,* 2012 U.S. Dist. LEXIS 104955, at *12. Weighed together, the three sub-factors indicate that entertaining this declaratory action would increase friction with the state courts and encroach on state authority by offending principles of comity and federalism. The Court therefore finds that the fourth *Grand Trunk* factor weighs against exercising jurisdiction.

### D. Factor Five: Is There a Better or More Effective Alternative Remedy Available?

The final factor to consider is the availability of alternative remedies that are "better or more effective" than a federal declaratory judgment. *Grand Trunk*, 746 F.2d at 326. "A district court should 'deny declaratory relief if an alternative remedy is better or more effective.'" *Flowers*, 513 F.3d at 562 (quoting *Grand Trunk*, 746 F.2d at 326). A better alternative may exist where "state law offers a declaratory remedy or if coverage issues can be litigated in state-court indemnity actions." *See Encompass Indem.*, 434 F. Supp. 3d at 575 (quoting *Cole's Place*, 936 F.3d at 401). "But the availability of such alternatives does

not necessarily make them better or more effective than federal declaratory actions." *Cincinnati Specialty Underwriters Ins. Co. v. Cent. Ky. Lodging, Inc.*, 2021 WL 4524172, 2021 U.S. Dist. LEXIS 191478, at *33 (E.D. Ky. Oct. 4, 2021). Rather, the inquiry on this factor "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562.

There are at least two alternative remedies available here: a declaratory action filed in state court under KRS § 418.040, or an indemnity action filed at the conclusion of the state action. *See Flowers*, 513 F.3d at 562. Considering the facts and procedural posture of both this case and the underlying state court action, an indemnity action does not appear to be a better or more effective remedy because it would require White Pine to wait until the liability issues are resolved before determining its obligations. "Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Id.*

But declaratory relief sought in Kentucky courts would be a better and more effective remedy. Though a declaration from a Kentucky state court would provide the same remedy as sought in federal court, "the state remedy has the advantage of allowing the state court to apply its own law." *Cole's Place*, 936 F.3d at 401. As the Court explained previously, it is preferable for a state court to resolve questions of insurance contracts and coverage because those issues are intimately entwined with important state policies. A declaratory action in Kentucky state court also has the advantage of efficiency—such an action filed in Fayette Circuit court could be consolidated with the

– 32 –

underlying state court action and "all issues could be resolved by the same judge."[6] *Flowers*, 513 F.3d at 562. That would allow the parties to litigate the issues on one front, rather than two, and eliminate any risk of factual issues being decided differently.

White Pine's argument that there is no better or more effective alternative remedy mainly focuses on efficiency. However, "[White Pine]'s position that federal adjudication of coverage would be more 'efficient' boils down to an attempt to make the litigation less costly for [itself] by avoiding state-court discovery and coming to a coverage determination more quickly." *Am. Nat'l Prop. & Cas. Co. v. Wilson*, 2019 WL 1876797, 2019 U.S. Dist. LEXIS 70842, at *20–21 (E.D. Ky. Apr. 26, 2019). "This self-serving argument fails to show, however, that the Kentucky court lacks alternative remedies which are better or more effective than the instant action" or "why the state court is not capable of bifurcating the coverage issue from liability or otherwise ordering discovery in an efficient manner." *Id.* "Thus, [White Pine] has made no

---

[6] White Pine argues that it cannot seek declaratory relief in the state court action because it is not formally named as a defendant in that case. However, "it is not unusual for courts to reason that seeking declaratory relief in state court is preferrable to a federal action requesting the same relief even where the insurance company is not formally joined to the underlying state court proceeding." *Cent. Ky. Lodging*, 2021 U.S. Dist. LEXIS 191478, at *34; *see also Mass. Bay*, 759 F. App'x at 441 (concluding that the insurance company could have filed a state court declaratory judgment action which may have been consolidated with the underlying state court action); *Auto Owners Ins. Co. v. Trip Cat, LLC*, 444 F. Supp. 3d 764, 774 (E.D. Ky. 2020) ("Plaintiff [i.e., the insurance company] could file a declaratory judgment action in state court and petition that court to combine the two actions, which the Court finds would be a better alternative."); *cf. Flowers*, 513 F.3d at 562 (determining that a Kentucky declaratory action, which might have been consolidated with the underlying state court litigation, "would have been better" but finding no abuse of discretion where the district court reached a contrary conclusion).

showing that the Kentucky court is unable or unwilling to resolve this state law contract and insurance coverage issue in a timely, competent, fair and comprehensive fashion and therefore judicial economy and comity alike militate against exercising federal jurisdiction." *Id.*, at *21 (cleaned up).

For these reasons, the Court finds that a declaratory action in the state court is a better remedy than this federal declaratory action. Thus, the final factor weighs in favor of declining jurisdiction.

### E.   Weighing the Factors

The Sixth Circuit has not prescribed an exact method of balancing the *Grand Trunk* factors. *See Flowers*, 513 F.3d at 563. "In deciding how to balance these factors, district courts must rely on the 'unique and substantial' discretion granted to them by the Declaratory Judgment Act." *Grange*, 565 F. Supp. 2d at 791 (quoting *Flowers*, 513 F.3d at 563).

Here, four of the five factors weigh against accepting jurisdiction. The only factor that does not weigh toward declining jurisdiction is the third, which is neutral and afforded little weight in the absence of evidence or procedural fencing or a race to *res judicata*. Considered together, the factors indicate that the state court is better suited to consider the factual and legal questions presented in this action. Further, accepting jurisdiction would "cause the parties to engage in litigation on two fronts," which "neither further[s] the interests of justice nor preserv[es] parties' resources." *Grange*, 565 F. Supp. 2d at 785. District courts should "not to jump into the middle of ongoing litigation: declaratory judgment actions seeking an advance opinion of indemnity

issues are seldom helpful in resolving an ongoing action in another court." *Id.* (quoting *Bituminous*, 373 F.3d at 812) (cleaned up). A declaratory judgment from this Court, after the case has been before the state court for over a year, would needlessly usurp the state court's ability and authority to decide an issue of Kentucky state law.

It is "within the district court's discretion" to determine that there is "greater virtue" in the "policy consideration of consolidating litigation into one court" than there is in the "competing policy consideration" of determining parties' legal obligations as quickly as possible. *See Hoey*, 773 F.3d at 760 (cleaned up). Here, considerations of equity, comity, and federalism, as well as efficient use of judicial resources, strongly outweigh any competing policy considerations. The *Grand Trunk* factors, and the policy considerations underpinning them, counsel against exercising jurisdiction over this matter.

## Conclusion

Accordingly, for the reasons stated in this opinion, the Court hereby **ORDERS** as follows:

(1) Defendant Justin Rutherford's Motion to Join Co-Defendant's Motion to Dismiss [DE 21] is **GRANTED**;

(2) Defendants' Motion to Dismiss [DE 19] is **GRANTED**;

(3) The Court declines to exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, and this matter is **DISMISSED WITHOUT PREJUDICE** and **STRICKEN** from the Court's active docket.

Dated July 6, 2022.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY